# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

—————————————

Nº 12-cv-2416 (JFB) (AKT)

—————————————

## GARY VOLPE, ET AL.,

Plaintiffs,

VERSUS

## NASSAU COUNTY,
## NASSAU COUNTY POLICE DEPARTMENT,
## NASSAU COUNTY CIVIL SERVICE COMMISSION, AND
## EDWARD MANGANO, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY,

Defendants.

—————————————

**MEMORANDUM AND ORDER**
January 3, 2013

—————————————

JOSEPH F. BIANCO, District Judge:

Plaintiffs Gary Volpe, Matthew Sarter, Wayne Resnick, George Roa, Angelo Muro, Michael Spae, the estate of Steven Doran, Thomas Guiry, David Cullen III, Alfred Thursland, Richard Blanc, Gregory Bartow, Paul Radzewsky, John Russ, Michael Mirenda, Joseph Sperber, John Hoffman, Gerald Houck III, Christopher Brandimarte, Paul Klecka, Richard Gotterbarn, Matthew Love, Joseph Bartow, Jr., Lawrence Vetter, Robert Conti, James Delahunty, Steven White, Scott Kramer, Kenneth Blum, and Dennis Biancanello (collectively, "plaintiffs") commenced this action on behalf of themselves and all other males similarly situated, against Nassau County, the Nassau County Police Department, the Nassau County Civil Service Commission ("County defendants"), and Edward Mangano ("Mangano") in his individual and official capacities as Nassau County Executive (collectively, "defendants"). Plaintiffs alleged wage discrimination under the Equal Pay Act, 29 U.S.C. § 206(d) *et seq.* (the "EPA"), the New York Equal Pay Act New York Labor Law § 194 *et seq.* (the "NY EPA"), and Nassau County Government Law section 1307 ("Section 1307") against the County defendants and violations of their constitutional rights pursuant to 42 U.S.C. § 1983 ("Section 1983") against all defendants.

Specifically, plaintiffs claim that the County defendants violated plaintiffs' rights under the EPA, the NY EPA, and Section 1307 by paying them wages lower than the wages paid to women performing

substantially similar work. Plaintiffs also claim that defendants' failure to provide plaintiffs with compensation correspondent to that of their female counterparts constitutes an ongoing constitutional violation. In essence, plaintiffs allege that, in an attempt to correct an alleged pay disparity based upon gender between *female* Police Communication Operators ("PCOs") and Police Communication Operator Supervisors ("PCOSs") in the Nassau County Police Department and *male* Fire Communication Technicians ("FCOs") and Fire Communication Technician Supervisors ("FCOSs") in the Nassau County Fire Department – which was resolved as part of the settlement of a separate lawsuit in this District – the defendants have improperly instituted a pay disparity among PCOs and PCOSs, where males in those jobs make less money than females in the exact same jobs.

Defendants have moved to dismiss plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants argue that plaintiffs' EPA claims should be dismissed on the following grounds: (1) plaintiffs' claims are untimely; (2) plaintiffs failed to establish a *prima facie* case of wage discrimination; and (3) defendants did not engage in any discriminatory act giving rise to the wage disparity alleged. As to plaintiffs' Section 1307 claim, defendants contend that Section 1307 does not govern the type of conduct that forms the basis of plaintiffs' complaint. Finally, defendants move to dismiss plaintiffs' Section 1983 claim with respect to the County defendants on the grounds that (1) the claim is untimely, and (2) plaintiffs failed to allege a "policy or custom" of intentional discrimination, and with respect to Mangano on the grounds that (1) the claim against him is redundant of the claim against the County defendants, and (2) he had no personal knowledge of or involvement in the unconstitutional conduct alleged.

For the reasons set forth below, the Court denies defendants' motion with respect to plaintiffs' EPA, NY EPA, and Section 1307 claims, as well as the Section 1983 claim against the County defendants. In particular, the complaint alleges the following: (1) as a result of settlement money (in the form of backpay and lump sum payments) paid by Nassau County to female PCOs and PCOSs in connection with the lawsuit entitled *Ebbert v. Nassau County*, 05-cv-5445 (AKT), plaintiffs, who are male PCOs and PCOSs, make less money than female PCOs and PCOSs based solely on gender; (2) the male PCOs and PCOSs have the same titles and same job responsibilities as the female PCOs and PCOSs; and (3) the jobs of male PCOs and PCOSs are performed under the same working conditions as the jobs of female PCOs and PCOSs. Given these allegations, plaintiffs have stated a plausible claim under the EPA, the NY EPA, and Section 1307 against the County defendants that survives a motion to dismiss.

Defendants' arguments for dismissal at this stage are unpersuasive. First, defendants argue that plaintiffs' EPA claims are barred by the statute of limitations. However, since the alleged discriminatory pay practice at issue here (between the male and female PCOs and PCOSs) began at the time the *Ebbert* settlement was implemented in December 2011 and plaintiffs filed their complaint less than one year later, plaintiffs' EPA claims are clearly timely. Second, although the County defendants contend that no plausible claim can exist because the alleged unequal pay based on gender was the result of a court-approved settlement agreement, the Court disagrees. The mere fact that an alleged discriminatory pay structure is the product of a voluntary

settlement by an employer with other parties in a separate lawsuit, even with Court approval, does not automatically immunize the employer from liability under the discrimination laws. Nothing in the language of the EPA or other applicable statutes, or in the case authority interpreting those provisions, suggests that such a zone of employer immunity exists. To the contrary, it is clear under the law that employers, whether as part of a voluntary settlement in a lawsuit or otherwise, cannot discriminate under the EPA. Thus, the fact that the alleged pay disparity based upon gender was triggered by the *Ebbert* settlement does not preclude plaintiffs from asserting a plausible EPA claim. For the same reasons, plaintiffs' claims under Section 1307 and Section 1983 also survive a motion to dismiss. Although defendants argue that Section 1307 does not apply because it does not reference backpay or step adjustments awarded from litigation, the language of "equal pay" in the statute certainly encompasses backpay and step adjustments regardless of whether such pay was prompted by litigation. Similarly, as to Section 1983, plaintiffs have alleged that the unequal pay policy based on gender was instituted on a class-wide basis by the County itself, as a party in the *Ebbert* lawsuit, thus stating a plausible claim of municipal policy under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Finally, the Court agrees that the claims against County Executive Mangano (which are only brought pursuant to Section 1983) should be dismissed because (1) claims against him in his official capacity are duplicative of the claims against the County, and (2) other than speculation and conclusory assertions, plaintiffs have failed to allege a plausible claim of personal involvement by Mangano in the alleged discriminatory acts.

## I. BACKGROUND

### A. Factual Background

The following facts are taken from the complaint, including documents incorporated by reference in the complaint, as well as from information of which this Court may take judicial notice.[1] These facts are not findings of fact by the Court. Instead, the Court assumes these facts to be true for purposes of deciding the pending motion to dismiss, and will construe them in a light most favorable to plaintiff, the non-moving party.

### 1. Nassau County Positions and Salary Grades

Plaintiffs are residents of Nassau or Suffolk County who are employed by the Nassau County Police Department, an

---

[1] For purposes of this recitation of facts, the Court takes judicial notice of documents filed in *Ebbert v. Nassau County*, 05-cv-5445 (AKT), a separate federal proceeding directly related to matters at issue in this case. *See World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 425 F. Supp. 2d 484, 508 n.16 (S.D.N.Y. 2006) (noting that "the Court properly can take judicial notice of the filings and [an] Order in the Connecticut state court action" (citing *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983) ("Federal courts may also take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue."))); *Washington v. U.S. Tennis Ass'n*, 290 F. Supp. 2d 323, 326 (E.D.N.Y. 2003) (stating that courts are "permitted to take judicial notice of court documents from previous actions"). The Court does so "not for the truth of the matters asserted in the [*Ebbert*] litigation, but rather to establish the fact of such litigation and related filings." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (citation and quotation marks omitted). However, the Court does take judicial notice of the contents of the *Ebbert* court's Final Order and Judgment, entered December 22, 2011, because though not attached to the complaint, it was "incorporated in [the complaint] by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

agency of Nassau County, as Police Communication Operators ("PCOs") and/or Police Communication Operator Supervisors ("PCOSs"). The duties of a PCO include "receiving telephone calls placed on the Nassau County 911 emergency system, deciding on the appropriate response to each call, and dispatching appropriate aid." (Compl. ¶ 40.) There are approximately 172 PCOs and PCOSs in the Nassau County Police Department, 90% of which are female. (*Id.* ¶ 41.) Nassau County also employs Fire Communication Technicians ("FCTs") and Fire Communication Technician Supervisors ("FCTSs"), within the Nassau County Fire Department. FCTs and FCTSs perform tasks that are substantially similar to those performed by PCOs and PCOSs. (*Id.* ¶ 52.) However, all FCTs and FCTSs are male. (*See id.* ¶ 53.)

The Nassau County Civil Service Commission, an agency of Nassau County, is responsible for classifying county positions and establishing compensation rates for county employees. (*Id.* ¶ 35.) Prior to October 2001, the Commission ranked PCOs at a salary grade 7 and PCOSs at a salary grade 10. (*Id.* ¶ 46.) In October 2001, PCOs were elevated to a salary grade 9 and PCOSs were elevated to a salary grade 11. (*Id.* ¶ 47.) By contrast, both at and before October 2001, the Commission ranked FCTs at a salary grade 10 and FCTSs at a salary grade 12. (*Id.* ¶ 49.) On May 11, 2005, the Nassau County Legislature approved elevating PCOs to a salary grade 10 and PCOSs to a salary grade 12, thereby equalizing them in pay grade with FCTs and FCTSs, respectively. (*Id.* ¶ 50.)

Despite this equalization of salary grades, PCOs and PCOSs continued to be paid less than FCTs and FCTSs of comparable seniority. (*Id.* ¶ 52.) This alleged disparity continued to exist because, when the salary grades of PCOs and PCOSs

were first elevated in October 2001, "vertical upgrades" – steps or increases in pay within a salary grade based on seniority – were not concurrently given. (*Id.* ¶ 48.) As a result, PCOs and PCOSs were paid "between $1,500 and $10,000 less than FCTs and FCTSs of equal seniority for performing jobs of equivalent skill, effort, and responsibility." (*Id.* ¶ 51-52.)

## 2. *Ebbert v. Nassau County*

In November of 2005, female PCOs and PCOSs initiated a class action in federal court against Nassau County, the Nassau County Police Department, the Nassau County Civil Service Commission, and Thomas R. Suozzi, the County Executive (collectively, "*Ebbert* defendants"). *See Ebbert*, 05-cv-5445. The all-female plaintiff class ("*Ebbert* plaintiff class") alleged discrimination on the basis of gender. Specifically, the *Ebbert* plaintiff class alleged that it had been paid less and continued to be paid less, because of the absence of "vertical upgrades" for PCOs and PCOSs in 2001, than male FCTs and FCTSs of equal seniority performing substantially similar work. (*See* Compl. ¶ 53.) Male PCOs and PCOSs – the plaintiffs in this matter – did not intervene in the *Ebbert* action.

The *Ebbert* litigation was settled for seven million dollars, excluding attorneys' fees, in December of 2011. (*Id.* ¶ 55.) The *Ebbert* court approved a settlement with the following relevant provisions:

a. Within thirty (30) days of this Final Order, Defendants shall make back pay payments to each class member in the amount calculated by the Court-appointed expert.

b. Within thirty (30) days of the entry of this Final Order, Defendants shall pay to

each individually named plaintiff twenty thousand ($20,000) dollars.

c. Within thirty (30) days of the entry of this Final Order, Defendants shall set aside fifty thousand ($50,000) dollars to cover the costs of administration of the Settlement Agreement.

(*Id.* ¶ 54.) Thus, each of the female PCOs and PCOSs in the *Ebbert* plaintiff class was awarded backpay and lump sum payments as a result of the settlement. According to plaintiffs in this case, in addition to backpay and lump sum payments, the *Ebbert* plaintiff class also received increased pension and retirement benefits. (Aff. of Gary Volpe ¶ 8.)[2]

### 3. Alleged Discriminatory Impact of Defendants' Practices

The Court notes that the only difference between the *Ebbert* defendants and the defendants in this case is the fact that a different individual was sued as County Executive (due to a change in position between the two lawsuits). Thus, the defendants that paid the *Ebbert* plaintiff

---

[2] Because plaintiffs mentioned that the *Ebbert* plaintiff class received increased pension and retirement benefits post-settlement for the first time in an affidavit appended to their opposition papers – an affidavit that plaintiffs "did not attach . . . to the complaint, or refer to [] therein" – the Court will not consider the assertion for purposes of the instant motion. *Wendel v. New York*, 574 F. Supp. 2d 290, 296 (E.D.N.Y. 2008) (declining to consider an affidavit that was appended to plaintiff's opposition papers, but not attached to or referred to in the complaint, on a motion to dismiss). As discussed *infra*, plaintiffs' claims against the County defendants survive a motion to dismiss in connection with the alleged disparity based upon backpay and lump sum payments, apart from any disparity in pension and retirement benefits. However, if plaintiffs wish to also add these allegations, the Court in its discretion will permit plaintiffs to do so under Rule 15(a) of the Federal Rules of Civil Procedure.

class of female PCOs and PCOSs, pursuant to the settlement agreement discussed *infra*, are, for all intents and purposes, the same defendants in this case.

Plaintiffs allege that the monies defendants paid to the *Ebbert* plaintiff class made female PCOs and PCOSs higher paid than plaintiffs, the male counterparts of the female PCOs and PCOSs. (Compl. ¶¶ 56-58.) Defendants failed to issue comparable backpay, lump sum payments, and/or other compensation to plaintiffs, despite the fact that plaintiffs perform the same work as their female counterparts who received said remunerations. (*Id.*) As such, plaintiffs claim that defendants have and continue to unlawfully discriminate against them on the basis of gender.

### B. Procedural History

Plaintiffs filed this action on May 15, 2012. Defendants filed a motion to dismiss on July 19, 2012. Plaintiffs submitted their opposition on August 20, 2012, and defendants replied on September 6, 2012. Oral argument was held on December 19, 2012. The Court has fully considered the arguments and submissions of the parties.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595

F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556-57 (internal citation omitted)).

In adjudicating a motion to dismiss, a court is "normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Here, defendants ask the Court to "take judicial notice" of – and thus consider for purposes of this motion – two exhibits appended to an attorney declaration submitted in support of their motion to dismiss: (1) a complaint filed by plaintiff Volpe with an administrative agency, the New York State Division of Human Rights ("NYSDHR"), in an unrelated matter, and (2) the opinion and decision of the NYSDHR concerning the charges filed by the *Ebbert* plaintiff class. The Court notes that in adjudicating this motion, it may take judicial notice of documents in the public record, which includes records and reports of administrative bodies, *i.e.*, the NYSDHR. *See Colquitt v. Xerox Corp.*, No. 05-CV-6405, 2010 WL 3943734, at *1 n.2 (W.D.N.Y. Oct. 7, 2010) ("The Court may also consider documents of which judicial notice may be taken, including public records of the NYSDHR and EEOC."); *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002) ("Even if the [administrative] Transcript and Report were not integral, such documents could still be considered by the Court because the Court may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." (citation and internal quotation marks omitted)). Thus, the Court will take judicial notice of the two exhibits put forth by defendants simply "to establish the fact of such litigation and related filings" and/or to "ascertain the legal nature of the claim[s]" brought in those actions, but "not to support any factual determination in [this] subsequent litigation." *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388-89 (2d Cir. 1992).[3]

---

[3] The Court notes that County defendants ask the Court to take judicial notice of these two exhibits to support their statute of limitations argument – namely, to ascertain the date upon which they believe the statute of limitations for plaintiffs' EPA claims began to run. As discussed *supra*, while the Court takes judicial notice of these documents, the Court rejects County defendants' statute of limitations argument for the reasons set forth in this opinion.

## III. Discussion[4]

### A. Plaintiffs' EPA Claims

Plaintiffs allege that the County defendants discriminated against them, in violation of the EPA and the NY EPA, by paying them wages lower than those paid to similarly situated females for substantially equal work. County defendants move to dismiss plaintiffs' EPA claims on the following grounds: (1) plaintiffs' EPA claims are time barred by the statute of limitations; (2) plaintiffs cannot establish a *prima facie* case of wage discrimination under the EPA; and (3) because the higher payments to female PCOs and PCOSs were made pursuant to a court-approved settlement, County defendants did not engage in an unlawful discriminatory act in violation of the EPA when making such payments. For the reasons set forth below, the Court denies defendants' motion to dismiss with respect to plaintiffs' EPA claims.[5]

### 1. Applicable Law

Section 206(d) of the EPA prohibits employers from discriminating amongst employees on the basis of sex. 29 U.S.C. § 206(d). Under the EPA,

[n]o employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . .

*Id.* § 206(d)(1). "To prove a violation of the EPA, a plaintiff must first establish a *prima facie* case of discrimination by showing: i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions." *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999) (internal citation and quotation marks omitted).

Once a plaintiff has made out a *prima facie* case of discrimination under the EPA, "the burden of persuasion shifts to the defendant to show that the wage disparity is justified by one of the affirmative defenses provided under the Act: '(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.'" *Id.* at 136 (quoting 29 U.S.C. § 206(d)(1)). To successfully establish the last defense, a "factor other than sex", the employer "must also demonstrate that it had a legitimate business reason for implementing the gender-neutral factor that brought about the wage differential." *Id.* Once the employer

---

[4] Although defendants separately move for dismissal of the claims brought against the Nassau County Civil Service Commission, (Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 11), all of the arguments for the Civil Service Commission are the same as those for the County of Nassau. Thus, the Court treats the arguments together for purposes of this motion, and the motion is denied as to the Civil Service Commission for the same reasons it is denied as to the County itself.

[5] Since "[c]laims for violations of the Equal Pay Act and the New York State Equal Pay Law may be evaluated under the same standard," *Rose v. Goldman, Sachs & Co.*, 163 F. Supp. 2d 238, 243 (S.D.N.Y. 2001), the Court addresses defendants' motion to dismiss with respect to plaintiffs' EPA claim and plaintiffs' NY EPA claim together.

has established one of the enumerated affirmative defenses, the plaintiff may counter the defense "by producing evidence that the reasons the defendant seeks to advance are actually a pretext for sex discrimination." *Id.*

A claim under the EPA "must be commenced within two years of its accrual, or three years if the violation is willful." *Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 118 (2d Cir. 1997).

### 2. Analysis

#### a. Statute of Limitations

County defendants contend that plaintiffs' EPA claims are barred by either the two or three-year statute of limitations applicable to such claims. (Defs.' Mem. at 5-6.) In support of their argument, County defendants explain that plaintiffs would have known that their pay was not equal to that of FCTs and FCTSs back in 2005, if not earlier, when all PCOs and PCOSs were equalized in salary grade with FCTs and FCTSs but were not given comparable "vertical upgrades." (*Id.* at 6.) Yet, plaintiffs did not bring suit alleging that County defendants violated the EPA until 2012, approximately seven years later.

As a preliminary matter, the Court notes that County defendants' statute of limitations argument mischaracterizes the basis of plaintiffs' EPA claims. Plaintiffs' EPA claims are premised on the disparity in pay between male PCOs and PCOSs and female PCOs and PCOSs; they are not based on any comparison to the pay provided to FCTs and FCTSs. (*See* Compl. ¶¶ 56-58.)[6]

Thus, the relevant inquiry for statute of limitations purposes is when the disparity in pay between plaintiffs and their female counterparts occurred, not the timing of the disparity in pay between plaintiffs and FCTs and FCTSs.

County defendants contend that the statute of limitations began to run back in 2005, when plaintiffs allegedly learned that their pay was not equal to that of FCTs and FCTSs. However, at that time, male and female PCOs and PCOSs were receiving the same amount of pay. It was not until December 2011, when the *Ebbert* settlement was executed, that any kind of pay differential between male and female PCOs and PCOSs occurred.[7] *See Klask v. Nw. Airlines, Inc.*, No. 4-86-352, 1989 WL 308010, at *4 (D. Minn. Aug. 28, 1989) (finding that the statute of limitations for male cabin attendants' EPA claim began to run when the pay differential between the male plaintiffs and female cabin attendants doing comparable work occurred, which was when defendant made backpay payments to female cabin attendants, as required under the final judgment in a separate case – to equalize the pay between female cabin attendants and male pursers doing

---

[6] The Court has considered the following argument put forth by County defendants: "Despite what the pleadings suggest, Plaintiffs' complaint is not that the female PCOs and PCOSs are higher paid than the male PCOs and PCOSs but rather that the FCTs and FCTSs had a higher salary grade than them prior to 2005, which was the exact issue in *Ebbert*." (Defs.' Mem. at 5.) However, the Court does not share County defendants' interpretation of plaintiffs' complaint, and therefore declines to analyze plaintiffs' EPA claims accordingly.

[7] The Court notes that the *Ebbert* settlement agreement, setting forth the backpay and lump sum payments defendants were to make to the *Ebbert* plaintiff class, was executed on December 22, 2011, but that the payments themselves would have been officially tendered at a later date. The Court need not decide whether the statute of limitations for plaintiffs' EPA claims began to run on the date the settlement was executed or on the later date when the payments pursuant to the settlement agreement were made because, under either scenario, plaintiffs' EPA claims were brought within the applicable statute of limitations period.

comparable work under similar conditions –, that it did not similarly provide to the male cabin attendants). Plaintiffs subsequently filed suit less than one year later. Accordingly, plaintiffs' EPA claim is timely whether a two or three-year statute of limitations applies, and defendants' motion to dismiss plaintiffs' EPA claims fails on this ground.[8]

### b. Plaintiffs' *Prima Facie* Case

County defendants also move to dismiss plaintiffs' EPA claims on the grounds that plaintiffs have failed to establish a *prima facie* case of wage discrimination because male and female PCOs and PCOSs of equal seniority are currently paid the same regular wages. (Defs.' Mem. at 4.) County defendants argue that, although backpay was issued to female PCOs and PCOSs "as part of a court-approved settlement[,] . . . [the] settlement did not result in a change in grade or salary for the female PCOs and PCOSs." (*Id.*) As such, County defendants claim that plaintiffs cannot satisfy the first prong of their *prima facie* case – showing that the employer pays different wages to employees of the opposite sex – and that their EPA claim should therefore be dismissed.

The Court disagrees with County defendants' contention that a showing that backpay payments were made to employees of one gender, and not the other, fails to satisfy the first prong of a *prima facie* case under the EPA. In *Klask v. Northwest Airlines, Inc.*, the District Court of Minnesota considered this very question. 1989 WL 308010, at *3. Female cabin

attendants had brought a separate, prior litigation against Northwest Airlines, alleging that the Airline discriminated against them by paying them less than male pursers who performed equal work under similar conditions. *Id.* at *1-2. Pursuant to the final judgment in that litigation ("*Laffy*"), in May 1985, Northwest Airlines began paying female cabin attendants backpay awards for salary covering the 1970-76 period and other benefits covering the 1970-78 period. *Id.* at *3. Male cabin attendants performing similar work, under similar conditions, and during the same time period as the female cabin attendants who were awarded backpay, subsequently sued Northwest Airlines, claiming that the Airline's failure to pay them the amounts it paid the female cabin attendants in 1985, covering the 1970-78 time period, constituted unlawful wage discrimination under the EPA. *Id.* In evaluating whether the plaintiffs established the first prong of their *prima facie* case, the *Klask* court explained that "[t]he higher rate of pay occurred in 1985 when a number of women cabin attendants received backpay payments made pursuant to the final judgment in *Laffey*." *Id.* Thus, the court found that a showing that an employer paid backpay payments to employees of one gender and not the other is enough to satisfy the first prong of a *prima facie* case of wage discrimination. *Id.* This Court agrees.

As to the second and third prongs of plaintiffs' *prima facie* case – showing that the male and female employees perform the same jobs under similar working conditions –, plaintiffs are alleged to have held the same titles, worked under the same conditions, and had the same responsibilities as their female counterparts, female PCOs and PCOSs. (*See* Compl. ¶¶ 40-41, 56.) As such, County defendants do not contend, nor can they credibly contend, that plaintiffs have failed to properly allege the second and

---

[8] The NY EPA has a longer, six-year statute of limitations. *Patrowich v. Chem. Bank*, 98 A.D.2d 318, 325 (1st Dep't 1984). Because the Court has determined that plaintiffs brought their EPA claims within the shorter statute of limitations applicable to federal EPA claims, plaintiffs' state EPA claim must also be timely.

third prongs of their *prima facie* case. Thus, the Court holds that plaintiffs have sufficiently alleged a plausible, *prima facie* case of County defendants' violation of the EPA to survive a motion to dismiss.

### c. Defendants' Alleged Defense

County defendants also claim that, because backpay and lump sum payments to female PCOs and PCOSs were made in accordance with a settlement, defendants did not engage in a discriminatory act. (*See* Defs.' Mem. at 5.) Essentially, the County defendants claim that they should be immunized or exempt from liability under the EPA as a matter of law because payments made to female employees – payments that were not made to similarly situated male employees – were made pursuant to the requirements of a court-approved settlement agreement.

Although not explicitly stated as such, the Court reads County defendants' argument as a "factor other than sex" defense to the wage disparity between male and female PCOs and PCOSs. However, this Court holds that "the fact that the payments were made pursuant to a[] [settlement] does not justify the unequal pay." *Klask*, 1989 WL 308010, at *4-5 (considering the issue of whether male cabin attendants are entitled to backpay that was awarded to female cabin attendants and rejecting defendant's "factor other than sex" defense – that the backpay was awarded pursuant to a final judgment entered by a court in another litigation – as a matter of law); *see also Meegan v. City of Buffalo*, No. CIV-79-467, 1980 WL 18660, at *3-4 (W.D.N.Y. July 24, 1980) (holding that compliance with a state court order in a prior sex discrimination case was an invalid "factor other than sex" defense under the EPA to defendant paying females more than males performing substantially similar work). Moreover, because the "wage

differential at issue herein was a direct result of [a] . . . sex discrimination action, it was for all intents and purposes based on sex." *Meegan*, 1980 WL 18660, at *4. Thus, the fact that the alleged unequal pay structure was part of a voluntary, court-approved settlement in the *Ebbert* case does not mean that the Court can preclude an otherwise plausible claim under the "factor other than sex" defense. Nothing in the language of the EPA, or in any case authority interpreting that statute, suggests that such a pocket of immunity exists for employers. To the contrary, the language of Section 206(d) prohibits unequal pay based upon gender, and provides no exception if the gender-based unequal pay structure arose from a voluntary settlement by the employer of another lawsuit.

County defendants also contend that they "were not legally bound to issue back pay to (and/or adjust steps of) anyone other than the class members" in *Ebbert*. (Defs.' Mem. at 5.) The Court agrees that, pursuant to the terms of the *Ebbert* settlement, the County defendants had no legal obligation to remit backpay or other types of payments to the male plaintiffs in this case. However, because County defendants were under no obligation to make backpay or other types of payments to any PCOs or PCOSs when they chose to remit such payments to female PCOs or PCOSs to settle the *Ebbert* case, once they elected to pay the females, those payments had to be applied to both sexes equally. *See Bd. of Regents v. Dawes*, 522 F.2d 380, 384 (8th Cir. 1975) (holding that "when a University establishes and effectuates a formula for determining a minimum salary schedule for one sex . . ., it is a violation of the Equal Pay Act to refuse to pay employees of the opposite sex the minimum required under the formula"); *see also Meegan*, 1980 WL 18660, at *4 (adopting the reasoning of *Dawes* and explaining that because the minimum pay

for female employees was established by defendants as a result of a prior state court action and that same minimum was not applied to males performing similar work, defendants violated the EPA). Allowing County defendants to maintain the wage differential caused by their compliance with the *Ebbert* settlement "would, at a minimum, contravene the spirit of th[e] [defenses] section and of the Equal Pay Act in general." *Meegan*, 1980 WL 18660, at *4.

In sum, plaintiffs both brought their EPA claims within the applicable statute of limitations periods and have sufficiently alleged a *prima facie* case of wage discrimination under the EPA. The fact that the alleged disparity in pay was prompted or created as part of a voluntary settlement of another lawsuit involving the employer does not automatically bar the EPA claim under the "factor other than sex" defense. Therefore, viewing the facts alleged in the complaint in the light most favorable to plaintiffs, the Court concludes that plaintiffs have sufficiently pled plausible EPA discrimination claims that survive a motion to dismiss.

### B. Plaintiffs' Section 1307 Claim

Plaintiffs allege that, by making payments required under the *Ebbert* settlement to female PCOs and PCOSs, and not to male PCOs and PCOSs, County defendants violated Section 1307 of the Nassau County Government Laws. Defendants move to dismiss plaintiffs' Section 1307 claim on the ground that Section 1307 "only governs job classification and standardization of salaries and conditions of employment", and defendants complied with Section 1307 on May 11, 2005, when PCOs and PCOSs were equalized in grade with FCTs and FCTSs. (Defs.' Mem. at 8.)

As discussed *infra*, plaintiffs' claims of wage discrimination are premised on the disparity in pay between male and female PCOs and PCOSs, not between PCOs and PCOSs and FCTs and FCTSs. Thus, County defendants' contention that any alleged Section 1307 violation was cured on May 11, 2005, when the salary grades of PCOs and PCOSs and FCTs and FCTSs were equalized, is inapposite. The Section 1307 violation alleged by plaintiffs occurred as a result of the *Ebbert* settlement, when County defendants agreed to make payments to female PCOs and PCOSs and did not likewise remit such payments to male PCOs and PCOSs.

County defendants also claim that because "[b]ack pay awarded and/or step adjustments as a result of litigation and/or settlement is not provided for in Section 1307", County defendants did not violate Section 1307 when they settled the *Ebbert* case. (*Id.*) Section 1307 provides that the Nassau County Civil Service Commission shall "standardiz[e] salaries and conditions of employment in all departments, offices, institutions and agencies of the county, so that, as near as may be, equal *pay* may be given for equal work." (emphasis added). As discussed *infra*, backpay may be considered a form of payment for purposes of determining whether an equal pay violation has occurred. Plaintiffs have pled that, due to the *Ebbert* settlement, their female counterparts received backpay payments that they did not similarly receive. (Compl. ¶ 56-57.) Thus, in viewing the facts alleged in the complaint in the light most favorable to plaintiffs, the Court concludes that plaintiffs have sufficiently pled a plausible Section 1307 claim that survives a motion to dismiss.

### C. Plaintiffs' Section 1983 Claim

Plaintiffs allege that defendants have and continue to intentionally discriminate against plaintiffs in violation of their constitutional rights. Defendants move to dismiss plaintiffs' Section 1983 claim with respect to the County defendants on the following grounds: (1) plaintiffs' claim is barred by the applicable statute of limitations; and (2) plaintiffs failed to demonstrate that the alleged constitutional violation was caused by a policy or custom of the County defendants. Additionally, defendants move to dismiss plaintiffs' Section 1983 claim with respect to Mangano on the following grounds: (1) in terms of the claim against Mangano in his official capacity, the claim is redundant of the claim against Nassau County; and (2) in terms of the claim against Mangano in his individual capacity, Mangano had no involvement or personal knowledge of the alleged acts.

### 1. Applicable Law

To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. Section 1983 does not itself create substantive rights; it offers "a method for vindicating federal rights elsewhere conferred." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation and quotation marks omitted). In other words, "supervisor liability in a § 1983 action depends on a showing of some personal responsibility,

and cannot rest on *respondeat superior*." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Supervisor liability can be shown in one or more of the following ways: "(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Id.* at 145 (citation omitted).

As to municipal entities, the Supreme Court has explained that a municipal entity may be held liable under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." *Monell*, 436 U.S. 658, 694 (1978). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). Instead, discriminatory practices of city officials that are "persistent and widespread" can be "so permanent and well settled as to constitute a custom or usage with the force of law, and thereby generate municipal liability." *Sorlucco*, 971 F.2d at 870-71 (citing *Monell*, 436 U.S. at 691) (internal quotation marks omitted). Moreover, a policy, custom, or practice of the entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson*, 375 F.3d at 226 (quoting *Kern*, 93 F.3d at 44).

For Section 1983 actions in New York, the statute of limitations is three years.

*Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994). The limitations period begins to run, or accrue, "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 90 (2d Cir. 2002) (internal citation and quotation marks omitted).

## 2. Analysis

### a. County Defendants

In moving to dismiss plaintiffs' Section 1983 claim, County defendants argue that the claim is barred by the statute of limitations. In particular, County Defendants argue that "[a]ny claim pertaining to the salary grade inequity between the FCTs and FCTSs and the PCO and PCOSs before the 2005 grade equalization would also be time barred, as the statute of limitations for intentional discrimination is one year under New York law." (Defs.' Mem. at 9.) However, for the same reasons defendants' statute of limitations argument under the EPA cannot prevail, this contention under Section 1983 also fails. Plaintiffs – that is, the male PCOs and PCOSs – are not challenging the inequity in their salary as compared to FCTs or FCTSs; rather, they are challenging the pay inequality in their salary as compared to female PCOs and PCOSs, which was created as a result of the *Ebbert* settlement in 2011, not in 2005. As noted above, the statute of limitations for Section 1983 actions in New York is three years. Because plaintiffs' claim was brought within three years of the *Ebbert* settlement, the event that plaintiffs allege gave rise to their claim, plaintiffs' Section 1983 claim against the County defendants is timely.

The County defendants also set forth another ground for dismissal of plaintiffs' Section 1983 claim – that plaintiffs have failed to allege that County defendants have

a policy or custom of constitutional deprivation. (*Id.* at 8-9.) Under *Monell*, plaintiffs must show that the County defendants have a "policy or custom" of discrimination. 436 U.S. at 694. As the Second Circuit has explained, "'the mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'" *Zherka v. City of New York*, 459 Fed. App'x. 10, 12 (2d Cir. 2012) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995)).

In support of their Section 1983 claim, plaintiffs allege that the practices and policies of the County defendants have led to this alleged intentional discrimination based upon gender in violation of Section 1983. (Compl. ¶ 66.) Specifically, plaintiffs allege a policy of unequal pay based upon gender that (1) applies across a class of all men employed by the Nassau County Police Department as PCOs and PCOSs, and (2) was instituted by the County in response to the settlement of the *Ebbert* lawsuit, to which the County itself was a party. These contentions are sufficient to allege a discriminatory policy under *Monell* that survives a motion to dismiss.[9]

In sum, the motion to dismiss the Section 1983 claim against the County defendants is denied.

---

[9] The Court notes that plaintiffs could also attempt to demonstrate a policy of discrimination under Section 1983 by not only pointing to this lawsuit, which alleges a policy of unequal pay based upon gender as among PCOs and PCOSs, but also the *Ebbert* lawsuit, which made the same allegations of discrimination on the basis of gender by the County defendants as between PCOs and PCOSs and FCTs and FCTSs.

### b. Mangano

#### i. Official Capacity

Defendants argue that plaintiffs' Section 1983 claim against Mangano in his official capacity should be dismissed as duplicative of the claim against Nassau County. This Court agrees. The claim against Mangano in his official capacity is duplicative of the municipal liability claim lodged against Nassau County under *Monell*, 436 U.S. 658. *See, e.g.*, *Tsotesi v. Bd. of Educ.*, 258 F. Supp. 2d 336, 338 n.10 (S.D.N.Y. 2003) (dismissing claims against officials sued in their official capacities where plaintiff also sued municipality (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985))). Therefore, the Court dismisses the Section 1983 claim brought against Mangano in his official capacity.

#### ii. Individual Capacity

Defendants also argue that plaintiffs' Section 1983 claim against Mangano in his individual capacity should be dismissed given Mangano's lack of knowledge or involvement in the unconstitutional conduct alleged. In order to hold Mangano liable in his individual capacity under Section 1983 for intentional discrimination, plaintiffs must provide proof of Mangano's discriminatory intent. *See Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012). "[L]iability for an Equal Protection Clause violation under § 1983 requires personal involvement by a defendant, who must act with discriminatory purpose. Purposeful discrimination requires more than intent as volition or intent as awareness of consequences. . . . It instead involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Id.* (citing and quoting *Iqbal*, 556

U.S. at 676) (internal citation and quotation marks omitted).

The complaint is devoid of any reference to actions taken by Mangano in violation of plaintiffs' constitutional rights, let alone any reference to Mangano's alleged discriminatory intent. Instead, the complaint only mentions Mangano in a conclusory fashion. "It is well-settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (quoting *Morabito v. Blum*, 528 F. Supp. 252, 262 (S.D.N.Y. 1981)) (internal quotation marks omitted). In fact, plaintiffs' opposition papers make clear that the allegations against Mangano are based upon speculation and conjecture. (*See* Pls.' Mem. of Law in Opp'n to Mot. to Dismiss at 14 ("[I]t is hard to believe that Mangano did not play a substantial role in not only agreeing to the settlement but in determining who would be affected by the settlement."); *see also id.* at 15 ("At this time, it is unknown what role Mr. Mangano played and therefore he should not be dismissed from the lawsuit absent discovery into the extent of his involvement in reaching and approving the *Ebbert* settlement.").)[10] Such conjecture and speculation is not sufficient to state a plausible claim of individual liability under Section 1983. Thus, the Court dismisses the

---

[10] Indeed, when asked at oral argument about plaintiffs' basis for holding Mangano liable in his individual capacity under Section 1983, plaintiffs' counsel responded with speculation and conjecture, stating that her "feeling regarding Mangano is that he must have known what was going on due to the heavy involvement of NIFA, due to the large amount of the [*Ebbert*] settlement of seven million dollars plus, and the fact that it was approved by the Nassau County legislature." (Oral Arg. Dec. 19, 2012.)

Section 1983 claim brought against Mangano in his individual capacity as well.

In sum, the Court grants the motion to dismiss plaintiffs' Section 1983 claims against Mangano in both his official and individual capacities.

## IV. CONCLUSION

For the foregoing reasons, the Court denies defendants' motion to dismiss with respect to plaintiffs' EPA, NY EPA, and Section 1307 claims. The Court grants defendants' motion to dismiss with respect to plaintiffs' Section 1983 claim against Mangano, but denies the motion with respect to the Section 1983 claim against the County defendants.

SO ORDERED.


_____
JOSEPH F. BIANCO
United States District Judge


Dated: January 3, 2013
        Central Islip, NY


* * *

Plaintiffs are represented by Louis D. Stober, Jr. and Jamie A. Rowsell, Law Offices of Louis D. Stober, Jr., LLC, 350 Old Country Road, Garden City, N.Y. 11530. Defendants are represented by Michelle M. Faraci, Nassau County Attorney's Office, One West Street, Mineola, N.Y. 11501.