UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

№ 12-CV-2416 (JFB)(AKT)
_____

GARY VOLPE, ET AL.,

Plaintiffs,

VERSUS

NASSAU COUNTY, ET AL.,

Defendants.
_____

**MEMORANDUM AND ORDER**
October 24, 2016
_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs Gary Volpe, Matthew F. Sarter, Wayne Resnick, George Roa, Angelo Muro, Michael T. Spae, the Estate of Steven Doran, Thomas G. Guiry, David B. Cullen III, Alfred Thursland, Richard A. Blanc, Gregory Bartow, Paul J. Radzewsky, John G. Russ, Michael Mirenda, Joseph Sperber, John T. Hoffman, Gerald M. Houck III, Christopher L. Brandimarte, Paul Klecka, Richard C. Gotterbarn, Matthew W. Love, Joseph M. Bartow, Jr., Lawrence P. Vetter, Robert P. Conti, James Delahunty, Steven T. White, Scott Kramer, Kenneth R. Blum, and Dennis Biancanello (collectively, "plaintiffs") brought this action against Nassau County, the Nassau County Police Department, the Nassau County Civil Service Commission ("County defendants"), and Edward Mangano ("Mangano") in his individual and official capacities as Nassau County Executive (collectively, "defendants"). Plaintiffs alleged wage discrimination under the Equal Pay Act, 29 U.S.C. § 206(d) *et seq.* (the "EPA"), the New York Equal Pay Act, New York Labor Law § 194 *et seq.* (the "NY EPA"), and Nassau County Government Law § 1307 ("Section 1307") against the County defendants as well as violations of their constitutional rights pursuant to 42 U.S.C. § 1983 ("Section 1983") against all defendants.

Specifically, plaintiffs claimed that the County defendants violated plaintiffs' rights under the EPA, the NY EPA, and Section 1307 by paying them wages lower than the wages paid to women performing substantially similar work. Plaintiffs also claimed that defendants' failure to provide plaintiffs with compensation correspondent to that of their female counterparts constituted an ongoing constitutional violation. In essence, plaintiffs alleged that, in an attempt to correct an alleged pay disparity based upon gender between *female* Police Communication Operators ("PCOs") and Police Communication Operator

Supervisors ("PCOSs") in the Nassau County Police Department and *male* Fire Communication Technicians ("FCOs") and Fire Communication Technician Supervisors ("FCOSs") in the Nassau County Fire Department – which was resolved as part of the settlement of a separate lawsuit in this District – the defendants improperly instituted a pay disparity among PCOs and PCOSs, where males in those jobs made less money than females in the exact same jobs.

On January 3, 2013, the Court denied defendants' motion to dismiss with respect to plaintiffs' EPA, NY EPA, Section 1307, and Section 1983 claims against the County defendants. The Court granted defendants' motion to dismiss with respect to the Section 1983 claim brought against Mangano. On September 30, 2015, the parties notified Judge Tomlinson that the parties had reached a settlement and had resolved all issues related to that settlement, and would file the executed settlement with the Court by October 14, 2015. The parties' settlement awarded plaintiffs $2,489,655, and pursuant to the terms of the settlement, plaintiffs applied to the Court for attorneys' fees and costs. Plaintiffs' motion for attorneys' fees and costs is presently before the Court.

I. BACKGROUND

A. Factual Background

The Court set forth the background facts of this case in the January 3, 2013 Order denying in part and granting in part defendants' motion to dismiss, *see Volpe v. Nassau County*, 915 F. Supp. 2d 284 (E.D.N.Y. 2013), and does not repeat those facts here.

B. Procedural History

Plaintiffs filed this action on May 15, 2012. On July 19, 2012, defendants filed a motion to dismiss, which the Court decided on January 3, 2013. On January 27, 2016, plaintiffs submitted a motion for attorneys' fees and reimbursement of costs. Defendants submitted their opposition on February 17, 2016, and plaintiffs submitted their reply on March 2, 2016. On March 30, 2016, defendants informed the Court that all of the settlement payments to plaintiffs had been made. Oral argument was held on May 10, 2016. The Court has fully considered all of the parties' submissions.

II. DISCUSSION

Plaintiffs request $829,885.00 in attorneys' fees, representing approximately one-third of the settlement amount, and reimbursement of $3,215.75 in costs. Although plaintiffs calculated the lodestar amount to be $214,208.35, plaintiffs argue that such amount is inadequate under the appropriate legal standards, and that the Court should apply the percentage of the recovery method or a lodestar multiplier in calculating fees. Defendants contend that plaintiffs' fee application should be assessed using the lodestar approach, and that plaintiffs' proposed hourly rates and number of hours billed are unreasonable and should be reduced. For the following reasons, after careful consideration of the law and the particular circumstances of this case, the Court in its discretion utilizes the lodestar calculation, and awards plaintiffs $145,246.44 in attorneys' fees and $3,385.85 in costs.

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010). However, 42 U.S.C. § 1988(b) provides that:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982,

2

1983, 1985, and 1986 of this title . . . title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

42 U.S.C.A. § 1988(b); *see also Blum v. Stenson*, 465 U.S. 886, 888 (1984) ("[I]n federal civil rights actions 'the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.'" (quoting 42 U.S.C. § 1988)).

### A. Percentage of the Settlement Value and Lodestar Multiplier

There are two methods for determining the reasonableness of a fee request in connection with a class action settlement: (1) the lodestar method, in which the hours reasonably expended on the case are multiplied by a reasonable hourly rate, and (2) the common fund method, in which the amount is calculated as a percentage of the award to the class. *McDaniel v. County of Schenectady*, 595 F.3d 411, 417-22 (2d Cir. 2010). In a class action, a "district court has the discretion to choose either the lodestar or percentage-of-fund approach in calculating attorney's fees." *Id.* at 420.

Plaintiffs' counsel contends that they are entitled to a fee of one-third of the settlement amount. They argue that, even though this action did not fit the standard for class certification, the same considerations for using the percentage of the fund method for awarding attorneys' fees in class actions should apply here, and that the general trend in this Circuit is to apply the percentage of the fund method. Defendants argue that the percentage of the fund method for calculating attorneys' fees has never been awarded in a non-class action suit in this Circuit and that it would be inappropriate and contrary to law for the Court to do so here.

The "trend" toward the percentage of the fund method plaintiffs' counsel describes has indeed been recognized by the Second Circuit, but only in class action cases or where a common fund exists. *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96 (2d Cir. 2005) (recognizing that "[t]he trend in this Circuit is toward the percentage method . . . which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation") (internal quotation marks and citation omitted). As defendants point out, no such fund requiring administration on the part of counsel is present here. Although plaintiffs' counsel argues that the logic supporting the use of the percentage of the fund method in class actions applies with equal force to a case like this with multiple plaintiffs, the Court disagrees. In fact, in *Blum*, the Supreme Court, in holding that a fifty percent upward adjustment to the fee award in a civil rights case was not warranted simply because the outcome "was of great benefit to a large class of needy people," explained the following:

> Nor do we believe that the *number* of persons benefited is a consideration

3

of significance in calculating fees under § 1988. Unlike the calculation of attorney's fees under the "common fund doctrine," where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under § 1988 reflects the amount of attorney time reasonably expended on the litigation. Presumably, counsel will spend as much time and will be as diligent in litigating a case that benefits a small class of people, or, indeed, in protecting the civil rights of a single individual.

465 U.S. at 900 n.16; *see also McDaniel*, 595 F.3d at 422 n.7 ("We do not suggest that concerns present in the common fund and statutory fee-shifting contexts are identical in every respect . . . .") (citations omitted). In short, this Court believes that there are unique aspects of class actions, not present in non-class actions such as this case, which make a percentage of the fund method particularly appropriate. Nevertheless, and contrary to defendants' suggestion, this Court recognizes that there are situations where the use of a percentage of the recovery approach could be warranted even in a non-class action context. *See generally Andrews v. City of New York*, 118 F. Supp. 3d 630, 636 (S.D.N.Y. 2015) ("[T]here are cases brought pursuant to fee-shifting statutes where attorney's fees are awarded at least in part out of plaintiff's recovery.") (collecting cases); *Green v. City of New York*, No. 05-CV-429 (SLT)(ETB), 2009 WL 3063059, at *6 (E.D.N.Y. Sept. 21, 2009) (noting that the common fund doctrine is not limited to certain types of commercial litigation and recognizing that "the common fund doctrine has been applied by circuit courts in other types of cases, including cases brought pursuant to statutes that contain fee-shifting provisions") (collecting cases). However, as noted in both *Andrews* and *Green*, those non-class action cases typically have special circumstances such as, for example, where the settlement agreement creates a fund of a set amount, releases defendants from further liability, and statutory fees are no longer available. *Andrews*, 118 F Supp. 3d at 636; *Green*, 2009 WL 3063059, at *7. No such special circumstances exist in the instant case and, for the reasons discussed in more detail below, the Court in its discretion concludes that there is no basis to utilize the percentage of the recovery method, and that the lodestar method provides a reasonable fee.

The Court reaches a similar conclusion with respect to plaintiffs' request for a lodestar multiplier. As a threshold matter, to the extent that defendants suggest that the Court lacks any authority to make an upward adjustment to the fee award through a multiplier under the lodestar method, the Court again disagrees. *See Blum*, 465 U.S. at 901 ("We . . . reject petitioner's argument that an upward adjustment to an attorney's fee is never appropriate under § 1988."). As set forth below, the Court retains the discretion to make an upward adjustment to a fee award if the circumstances of a particular case warrant such an adjustment.

In *Purdue*, the Supreme Court held, in the context of addressing a "reasonable fee" under a federal fee-shifting statute, that "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." 599 U.S. at 552. Moreover, with respect to whether a multiplier could be utilized under the lodestar method, the Supreme Court emphasized that a multiplier is warranted only in "rare and exceptional" circumstances, and provided the following explanation:

> [W]e have noted that the lodestar figure includes most, if not all, of the

relevant factors constituting a reasonable attorney's fee, and have held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation. We have thus held that the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors presumably [are] fully reflected in the number of billable hours recorded by counsel. We have also held that the quality of an attorney's performance generally should not be used to adjust the lodestar because considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate.

*Id.* at 553 (quotations and citations omitted). The Court then, after explicitly rejecting "any contention that a fee determined by the lodestar method may not be enhanced in any situation," held that superior attorney performance could only serve as a basis for an enhancement in narrow circumstances:

In this case, we are asked to decide either the quality of an attorney's performance or the results obtained are factors that may properly provide a basis for an enhancement. We treat these two factors as one. When a plaintiff's attorney achieves results that are more favorable than would have been predicted based on the governing law and the available evidence, the outcome may be attributable to superior performance and commitment of resources by plaintiff's counsel. Or the outcome may result from inferior performance by defense counsel, unanticipated defense concessions, unexpectedly favorable rulings by the court, an unexpectedly sympathetic jury, or simple luck. Since none of these latter causes can justify an enhanced award, superior results are relevant only to the extent it can be shown that they are the result of superior attorney performance. Thus, we need only consider whether superior attorney performance can justify an enhancement. And in light of the principles derived from our prior cases, we inquire whether there are circumstances in which superior attorney performance is not adequately taken into account in the lodestar calculation. We conclude that there are a few such circumstances but these circumstances are indeed "rare" and "exceptional" and require specific evidence that the lodestar fee would not have been "adequate to attract competent counsel."

*Id.* at 554. Following the Supreme Court's decision in *Perdue* in 2010, the Second Circuit reiterated that, although "[a] district court may adjust the lodestar when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee . . . such adjustments are appropriate only in rare circumstances because the lodestar figure [already] includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 167 (2d Cir. 2008) (quotations and citations omitted).

Thus, contrary to defendants' contention, a district court has discretion to depart from the lodestar calculation and make an upward enhancement, including in the form of a multiplier or utilizing a percentage of the recovery approach. However, in its discretion, the Court declines to apply a multiplier or to depart from the lodestar in this case. In doing so, the Court has

5

carefully considered the factors articulated by the Second Circuit in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47-48 (2d Cir. 2000), which are "applicable to the court's reasonableness determination whether a percentage-of-fund or lodestar is used, and in the latter context, indicate whether a multiplier should be applied to the lodestar." *McDaniel*, 595 F.3d at 423 (citation omitted). The *Goldberger* factors include: "(1) counsel's time and labor; (2) the litigation's magnitude and complexity; (3) the risk of the litigation; and (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* at 423 (citing *Goldberger*, 209 F.3d at 50).

Balancing these factors, the Court concludes in its discretion that neither a percentage of the recovery method, nor a lodestar multiplier, is warranted in this case. The Court does not view this case as particularly complex, or a high-risk endeavor for plaintiff's counsel. It was uncontroverted from the start of this case that plaintiffs, who are male PCOs and PCOSs, were being paid less than female PCOs and PCOSs who were performing substantially similar work. Plaintiffs' point to defendants' statute of limitations argument and defendants' argument that no liability existed because the disparate pay was the result of the settlement in *Ebbert v. Nassau County*. However, it was clear that there was disparate pay and that it did not begin until the settlement in *Ebbert* was executed in 2011. Therefore, the Court does not believe these fairly weak arguments presented significant hurdles to recovery. In short, this was not a complex case legally or factually and had a high likelihood of success from the outset. Thus, there was nothing exceptional about the legal work in this case. In analyzing these factors, the Court does not minimize the effort that plaintiffs' counsel put into this case, the quality of the representation, or the excellent result achieved for the multiple plaintiffs; rather, the Court concludes that these factors are adequately reflected in the lodestar calculation below (even with the reductions made by the Court), including in the Court's determination of the reasonable hourly rate pursuant to the *Arbor Hill* framework.[1] Moreover, that lodestar calculation is sufficient to satisfy the public policy consideration because, given the favorable circumstances of this case, the lodestar will incentivize counsel to participate in similar cases. Finally, under the circumstances of this case, the Court believes that utilizing a percentage of the recovery method or a lodestar multiplier would result in a windfall to plaintiffs' counsel.[2] In sum, the Court

---

[1] As the Second Circuit explained in *McDaniel*, although some district courts have expressed uncertainty as to whether a different lodestar method applies in common fund cases as opposed to statutory fee-shifting cases, the lodestar method is the same for both. 595 F.3d at 421-22. Thus, this Court notes that, whether the analysis is done under the *Goldberger* factors (as urged by plaintiffs' counsel here), or under the modified lodestar approach of *Arbor Hill* (with consideration of the *Johnson* factors in connection with estimating a reasonable hourly rate), the Court's calculations and conclusions are the same for the reasons set forth herein. *Id.* at 422 ("From a mathematical perspective, of course, it makes little difference whether a court, following *Arbor Hill*, considers case-specific factors to estimate a reasonable rate for an attorney's services, which is then multiplied by the number of hours worked, or whether the court takes the traditional approach and considers these same factors in calculating a multiplier to the lodestar. The benefit of *Arbor Hill*'s methodology is that by considering case-specific factors at the outset, the district court's focus on mimicking a market is maintained.").

[2] In their motion papers, plaintiffs' counsel suggests that their position is further supported because their retainer agreement provided that counsel would receive one-third of the total monies recovered. However, it is well-settled that a contingency fee arrangement in a retainer agreement, although a factor, is not dispositive on the determination by the

concludes that the *Goldberger* factors weigh strongly in favor of the lodestar calculation set forth below (using the *Arbor Hill* framework), rather than a percentage award, and weigh against any lodestar multiplier or upward enhancement.[3]

B. Reasonable Hourly Rate

Generally, to determine a reasonable attorneys' fee, a court must calculate a "lodestar figure," which is determined by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997). As noted *supra*, "[b]oth [the Second Circuit] and the Supreme Court have held that the lodestar . . . creates a 'presumptively reasonable fee.'" *Millea*, 658 F.3d at 166 (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); citing *Perdue*, 559 U.S. 542). "'[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee. . . ." *Perdue*, 559 U.S. at 553 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565-66 (1986)). Thus, the Supreme Court has recognized that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.* at 551. "The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012) (citing *Hensley*, 461 U.S. at 433).

"The reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. The Second Circuit's "'forum rule' generally requires use of 'the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). "Fees should not be awarded at higher out-of-district rates unless 'a reasonable client would have selected out-of-district counsel because doing so would likely . . . produce a substantially better net result.'" *Id.* (quoting

---

Court of a reasonable fee. *See, e.g.*, *Vacation Village, Inc. v. Clark County, Nevada*, 244 Fed. App'x 785, 788 (9th Cir. 2007) (upholding district court's use of lodestar approach to calculate a reasonable fee, rather than a twenty percent contingency fee contained in the retainer agreement). The existence of the contingency fee does not alter the Court's conclusion, in light of the other factors discussed *supra*, that the use of such a percentage, or of some lodestar multiplier, would result in an unreasonable fee in this case. Instead, the Court concludes that the lodestar calculation (including the reductions discussed *infra*) provides a reasonable fee. Moreover, the retainer agreement does not alter the Court's analysis of the reasonable hourly rates for plaintiffs' attorneys, as discussed *infra*.

[3] At oral argument, plaintiffs' counsel suggested that Judge Tomlinson's award of attorneys' fees in *Ebbert v. Nassau County* is analogous to the attorneys' fees request here. Although plaintiffs' counsel correctly observed that the settlement in *Ebbert* did not involve a common fund, plaintiffs' counsel in that case did represent a certified class. Moreover, the fees approved by Judge Tomlinson were agreed to by the parties pursuant to the settlement agreement and totaled $770,000, a sum representing, "at most, 11% of the $7 million Settlement obtained for Class Members." *Ebbert v. Nassau County*, No. 05-CV-5445 (AKT), 2011 WL 6826121, at *15 (E.D.N.Y. Dec. 22, 2011). By contrast, plaintiffs' counsel here does not represent a class, fees are disputed, and the requested fee award using the percentage method would represent thirty-three percent of the settlement obtained for plaintiffs.

*Simmons*, 575 F.3d at 172). In *Arbor Hill*, the Second Circuit also instructed district courts to consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 96 (1989). *See* 522 F.3d at 190.

> The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (quoting *Johnson*, 488 F.2d at 717-19). Finally, a district court should also consider "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," and "that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." *Id.* at 190. "The burden rests with the prevailing party to justify the reasonableness of the requested rate," and plaintiffs' attorney "should establish his hourly rate with satisfactory evidence—in addition to the attorney's own affidavits." *Hugee*, 852 F. Supp. 2d at 298 (internal quotation marks and citations omitted).

"Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners, $100 to $300 per hour for associates, and $70 to $100 per hour for paralegals." *D'Annunzio v. Ayken, Inc.*, No. 11-CV-3303 (WFK)(WDW), 2015 WL 5308094, at *4 (E.D.N.Y. Sept. 10, 2015); *see also Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 261 (E.D.N.Y. 2014) ("Recent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300-$450 for partners, $200-$325 for senior associates, and $100-$200 for junior associates." (internal quotation marks and citations omitted)). Of course, in light of the numerous factors that courts in this circuit consider to determine a reasonable hourly rate, "the range of 'reasonable' attorney fee rates in this district varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys." *Siracuse v. Program for the Dev. of Human Potential*, No. 07-CV-2205 (CLP), 2012 WL 1624291, at *30 (E.D.N.Y. Apr. 30, 2012).

Plaintiffs' counsel argues that it has spent "nearly 682 hours over more than three (3) years of litigation" (Pls.' Mem. of Law at 14) and that multiplying these hours by the hourly rate of each attorney results in a lodestar amount of approximately $214,208.35.

1. Louis D. Stober, Jr.

Louis D. Stober, Jr. ("Stober"), the partner who performed work on behalf of plaintiffs in this action, requests a rate of $450 per hour. Defendants argue that a

reasonable hourly rate for Stober would be between $325-375 per hour.

In support of his request, Stober submitted a declaration stating that he has specialized in labor and civil rights litigation for over thirty-one years, that he has "become well known to the judges of the Eastern District, having litigated numerous civil rights cases to successful conclusions. . . ," and that he has won several "million plus verdicts." (Stober Decl. ¶¶ 3, 5.) Stober also details his experience as a lecturer, an intern professor at Cornell University's Industrial Labor Relations School, and as an active member of the St. John's Law School Labor forum. (*Id.* ¶¶ 7-8.) Stober states that he has "personally handled this litigation from inception through conclusion" and that this case "was extremely complex and beyond the pale of the usual Equal Pay clams (sic) and gender discrimination claims. . . ." (*Id.* ¶ 10.) Stober further argues that he "litigated this case with tenacity, vigilance and efficiency, given the rotation of attorneys representing the [d]efendants and the review of thousands of documents and compilation of complex calculations." (Pls.' Mem. of Law at 14.)

Stober also attaches "affirmation[s] of numerous attorneys who practice in the field of civil rights/employment law which has been gathered by Rick Ostrove to illustrate that the hourly rates are in line with the prevailing rates in the legal community." (Stober Decl. ¶ 37.) For example, Robert J. Valli, who has been practicing law since 1991 and has been focusing on labor and employment law since 1997, states that he currently bills at a rate of $500 per hour and that in August 2015, he was awarded $450 per hour in a case that involved claims of sexual harassment. (Stober Decl., Ex. B.) Valli further states that his partners who have "less tenure in the field and less trial experience" bill at $450 per hour and were awarded $400 per hour in that case. (*Id.* ¶ 4.) Christopher Marlborough, who has been practicing law since 2003 and focusing on labor and employment and consumer class action law since 2007, states that he was awarded a 1.15 percent lodestar multiplier to his hourly rate of $555 as part of a 2014 settlement of a wage and hour case. (*Id.*)

In light of the prevailing hourly rates in this district, and all other factors set forth in *Arbor Hill*, the Court concludes that $425 per hour is a reasonable hourly rate for Stober. The Court bases this conclusion primarily on its own observations of Stober's abilities over the course of this litigation. In particular, Stober is an experienced lawyer, with over 31 years of experience in employment litigation and extensive trial experience. Moreover, even though the Court does not view the case as particularly complex, plaintiffs' counsel did an excellent job handling motion practice, negotiating the settlement, and addressing damages issues related to the settlement. Accordingly, this Court concludes that an hourly rate near the highest end of the range in this district is warranted. *See Hugee*, 852 F. Supp. 2d at 300 ("The highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields."). Although plaintiffs' counsel has cited several cases in which an attorney was awarded an hourly rate of $450, the Court concludes that such an award would be unduly high. *See, e.g.*, *Sass*, 6 F. Supp. 3d at 263 (awarding $425 per hour rather than the requested $450 for attorney with "33 years of experience trying approximately 500 employment discrimination cases"); *Luca v. Cnty. of Nassau*, 698 F. Supp. 2d 296, 301–02 (E.D.N.Y. 2010) (holding that $400 per hour was a reasonable hourly rate for

leading civil rights attorney with over twenty-five years of experience in the field); *Todaro v. Siegel Fenchel & Peddy, P.C.*, 697 F. Supp. 2d 395, 399 (E.D.N.Y. 2010) (holding that $400 per hour was a reasonable rate for a partner with seventeen years of employment discrimination litigation experience).[4]

2. Anthony P. Giustino

Plaintiffs request a rate of $400 per hour for Anthony P. Giustino ("Giustino"), an "of counsel" attorney at the Law Offices of Louis D. Stober, Jr., LLC. Defendants do not argue for a specific rate for Giustino, and based on a review of the invoice submitted by plaintiffs' counsel, it does not appear that he billed any time to this matter. (*See* Stober Decl., Ex. A.) The Court, therefore, does not award fees for Guistino.

3. Jamie Roswell and Albina Kataeva

Plaintiffs request a rate of $350 per hour for associates Jamie Roswell ("Roswell") and Albina Kataeva ("Kataeva"). Defendants argue that $175-250 is a reasonable rate.

Roswell has practiced law since 2004. (Stober Decl. ¶¶ 16-17.) After law school, from 2003-2004, Roswell interned at the Administration for Children's Services, from 2004-2006, Roswell was an associate at Rubin, Weisman, Colasanti, Kajko & Stein, and from 2006-2009, Roswell was an associate at Kaufman Dolowich & Voluck.

---

[4] In arriving at this hourly rate, the Court has considered all of the *Johnson* case-specific factors. *See Arbor Hill*, 522 F.3d at 190. For example, as noted above, the Court has determined that this case involved some contested issues, including the statute of limitations applicable to each plaintiff, the recovery available to plaintiffs who had different positions over time, and the compensation due to each plaintiff. However, the case was not so complex as to warrant the requested $450 per hour rate.

(*Id.*) Stober states that Roswell has worked at the Law Offices of Louis D. Stober, Jr., LLC on employment discrimination and labor law matters, including on the trial *Fishman v. County of Nassau.* (*Id.* ¶ 17.)

Kataeva began working at the Law offices of Louis D. Stober, Jr., LLC as an intern in 2011, and as an associate since her admission to the bar. (*Id.* ¶ 18.) Stober states that she has "handled hundreds of arbitrations, lawsuits, severances packages, and trials including sitting second chair in the federal case *Curcio v. Roosevelt Union Free School District, et al.*" (*Id.*) Stober also states that Kataeva previously worked in the New York State Department of Labor and was the recipient of the American Bar Association's Award for Excellence in the area of Labor and Employment Law in 2012. (*Id.*)

In light of the prevailing hourly rates in this district and all other factors set forth in *Arbor Hill* and *Johnson*, the Court concludes that $300 per hour is a reasonable rate for Roswell and that $225 is a reasonable rate for Kataeva. Courts within the Eastern District of New York have found reasonable hourly rates to be approximately $200-$325 for senior associates. *See, e.g.*, *Mary Jo C. v. Dinapoli*, No. 09-CV-5635 (SJF)(ARL), 2014 WL 7334863, at *5 (E.D.N.Y. Dec. 18, 2014) ("Recent prevailing hourly rates for attorneys practicing in the Eastern District of New York are . . . between two hundred to three hundred twenty-five dollars ($200.00–$325.00) for senior associates or attorneys with more limited experience."); *Sass*, 6 F. Supp. 3d at 261 (same). The Court notes that, although both Roswell and Kataeva were described as senior associates, Kataeva only graduated from law school in 2012. The Court, therefore, concludes that it is appropriate to award a higher rate for Roswell than Kataeva. In reaching these rates, the Court has considered all of the

relevant factors, including, *inter alia*, their experience, the nature of the work performed, and the quality of the work.

### 4. Paralegal and Administrative Assistant Nimisha Patel

Plaintiffs' counsel Stober states in his declaration both that he seeks $100 per hour and that he seeks $150 per hour for the paralegal who worked on this case. (Stober Aff. ¶¶ 14, 37.) Defendants argue that $70-80 per hour is a reasonable rate for legal assistants. Plaintiffs' counsel does not identify the paralegal or paralegals for whom fees are sought, but from the invoice submitted by plaintiffs' counsel, it appears that there is only one entry potentially relating to work performed by a paralegal identified with the initials "PAB" for "[r]eview of file for male CB operators and prep notice of claim." (Stober Decl. Ex. A.) In light of the prevailing hourly rates in this district and all other factors set forth in *Arbor Hill* and *Johnson*, the Court concludes that $90 per hour is a reasonable rate for the paralegal who worked on this case. *See Finkel v. Rico Elec., Inc.,* No. 11-CV-4232 (SJ), 2012 WL 6569779 (E.D.N.Y. Oct. 1, 2012), *adopted by* 2012 WL 6561270 (E.D.N.Y. Dec. 17, 2012) (recognizing that $90 per hour is a reasonable rate for a paralegal).

Plaintiffs' counsel also request $90 for administrative work performed by Nimisha Patel ("Patel"), which defendants do not appear to dispute. However, the entries billed to "NP" in plaintiffs' invoice appear to indicate the filing fee ($350) and serve processing fees ($240.75). (Stober Decl. Ex. A.) The Court, therefore, does not award fees for Patel.

### B. Reasonable Hours

Having determined the reasonable hourly rates, the Court must determine the reasonable number of hours expended by plaintiffs' counsel in this litigation.

"The party seeking attorney's fees also bears the burden of establishing that the number of hours for which compensation is sought is reasonable." *Custodio v. Am. Chain Link & Const., Inc.*, No. 06-CV-7148 (GBD), 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13, 2014) (citing *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994)). "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" *Id.* (quoting *Hensley*, 461 U.S. at 434; *N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)); *see also Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("We do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items."). For example, in *Matusick v. Erie County Water Authority*, the Second Circuit upheld a district court's fifty percent across-the-board reduction in hours in light of "concerns regarding unspecified conferences, telephone calls, email correspondence, and reviews." 757 F.3d 31, 64 (2d Cir. 2014) (internal quotation marks and citations omitted); *see also Francois v. Mazer*, 523 F. App'x 28, 29 (2d Cir. 2013) (upholding forty percent across-the-board

reduction in hours); *Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) (upholding fifteen percent across-the-board reduction); *Kirsch*, 148 F.3d at 173 (upholding "20% reduction for vagueness, inconsistencies, and other deficiencies in the billing records").

Defendants argue that many of the tasks billed are unreasonable, duplicative, or excessive. The Court determines that the hours billed by plaintiffs' counsel should be reduced by fifteen percent because of several substantial problems with billing records. *See, e.g.*, *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 314 (S.D.N.Y. 2009) ("Because the time records here contain some vague entries and block entries that prevent the Court from determining whether the time expended was reasonable . . . the Court will deduct a reasonable percentage of the number of hours claimed – in this case fifteen percent . . . ." (internal citation and quotation marks omitted)); *Spalluto v. Trump Int'l Hotel & Tower*, No. 04-CV-7497 (RJS)(HBP), 2008 WL 4525372, at *8-9 (S.D.N.Y. Oct. 2, 2008) (applying fifteen percent reduction for substantial use of block-billing and vague time entries); *Molefi v. Oppenheimer Trust*, No. 03-CV-5631 (FB)(VVP), 2007 WL 538547, at *7-8 (E.D.N.Y. Feb. 15, 2007) (applying fifteen percent reduction for, *inter alia*, a "substantial amount" of block-billing); *Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*, 277 F. Supp. 2d 323, 325-26 (S.D.N.Y. 2003) (applying fifteen percent reduction for block-billing and excessive time entries).

Defendants assert that "certain hours delineated as spent on tasks are unreasonable, insufficiently described, and are accordingly impossible to review." (Defs. Mem. of Law at 6.) The Court has reviewed the invoice and finds that, overall, the invoice describes the work performed in sufficient detail. However, the Court notes, with respect to a breakdown of time spent on each item, plaintiffs' counsel repeatedly used block-billing such that the reasonableness of each entry could not be as easily determined. Thus, the Court, in its discretion, has determined that a reduction to billed hours is appropriate in this case. *See, e.g., Spence v. Ellis*, No. 07-CV-5249 (TCP)(ARL), 2012 WL 7660124, at *7 (E.D.N.Y. Dec. 19, 2012), *report and recommendation adopted*, No. 07-CV-5249 (TCP), 2013 WL 867533 (E.D.N.Y. Mar. 7, 2013) (reducing hours in attorneys' fees application because the "substantial amount of block billing in the fee requests here renders it difficult to determine whether, and/or the extent to which the work done by plaintiff's attorneys is duplicative or unnecessary"); *Melnick v. Press*, No. 06-CV-6686 (JFB)(ARL), 2009 WL 2824586, at *6 (E.D.N.Y. Aug. 28, 2009) (applying ten percent reduction based on counsel's "repeated use of block-billing such that the reasonableness of each entry could not be as easily determined"); *Aiello v. Town of Brookhaven*, No. 94-CV-2622 (FB)(WDW), 2005 WL 1397202, at *3 (E.D.N.Y. June 13, 2005) (applying ten percent reduction to billed hours because of attorneys' "substantial" use of block-billing).

Defendants also argue that fees for travel time are beyond the accepted rate within this circuit and are therefore excessive. The Court agrees that the billing by plaintiffs' attorneys for all of their travel time is excessive and should be reduced by half. "Courts in this Circuit regularly reduce attorneys' fees by 50 percent for travel time." *See, e.g.*, *LV v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 526 (S.D.N.Y. 2010). Thus, the Court uses fifty percent of the rate awarded to each attorney to compensate for the travel time in this case.

In light of these problems with the billing records submitted by plaintiffs' counsel, the Court concludes that a fifteen percent across-the-board reduction in counsels' hours and a fifty percent reduction in counsels' travel hours is warranted.

\* \* \*

Accordingly, the Court calculates the lodestar figure to be $145,246.44, which represents 147.9 hours of Stober's time at a rate of $425 per hour, 17 hours of Stober's travel time at a rate of $212.50 per hour, 111.435 hours of Roswell's time at a rate of $300 per hour,[5] 198.6875 hours of Kataeva's time at a rate of $225 per hour, 4.5 hours of Kataeva's travel time at a rate of $112.5 per hour, and 1.5 hours of paralegal time at a rate of $90 per hour.[6] Moreover, as discussed in detail *supra*, the Court sees no reason to depart from the lodestar figure in this case, *see, e.g.*, *Perdue*, 559 U.S. at 553 (noting that lodestar figure includes "most, if not all," relevant factors in setting reasonable attorney's fee), and thus awards plaintiffs $145,246.44 in attorneys' fees.

## C. Costs

"As for costs, a court will generally award 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Pennacchio v. Powers*, No. 05-CV-985 (RRM)(RML), 2011 WL 2945825, at \*2 (E.D.N.Y. July 21, 2011) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). "The fee applicant bears the burden of adequately documenting and itemizing the costs requested." *Id.*; *see also First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, No. 10-CV-696 (KAM)(SMG), 2013 WL 950573, at \*10 (E.D.N.Y. Mar. 12, 2013) (same). In particular, under Local Civil Rule 54.1, "the party must include as part of the request 'an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred,'" and "[b]ills for the costs claimed must be attached as exhibits." *D.J. ex rel. Roberts v. City of New York*, No. 11-CV-5458 (JGK)(DF), 2012 WL 5431034, at \*9 (S.D.N.Y. Oct. 16, 2012) (quoting Local Civ. R. 54.1(a)), *report & recommendation adopted sub nom. Roberts v. City of New York*, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012).

Here, plaintiffs' counsel requests $3,215.75 for expenses incurred in this action. Plaintiffs' counsel includes as expenses: expert fees ($2,625), the filing fee ($350), and serve processing fees ($240.75). Plaintiffs' counsel includes documentation for these expenses, and defendants do not oppose them. Plaintiffs' counsel also includes in its invoice entries for a total of $170.10 in mileage related to travel. Accordingly, the Court awards plaintiffs' counsel $3,385.85 in costs.

---

[5] Roswell did not bill any time specifically to travel.

[6] Stober: 174 – (174 \* .15) = 147.9. Roswell: 131.1 – (131.1 \* .15) = 111.435. Kataeva: 233.75 – (233.75 \* .15) = 198.6875.

III. CONCLUSION

For the reasons set forth herein, the Court awards plaintiffs $145,246.44 in attorneys' fees and $3,385.85 in costs.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: October 24, 2016
       Central Islip, NY

\* \* \*

Plaintiffs are represented by Louis D. Stober, Jr. and Jamie A. Roswell of the Law Offices of Louis D. Stober, Jr. LLC, 250 Old Country Road, Suite 205, Garden City, New York 11530. The County is represented by Michael Paul Siravo and Andrew Kenneth Preston of Bee Ready Fishbein Hatter & Donovan, LLP, 170 Old Country Road, Suite 200, Mineola, New York 11501